UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| LOCKHEED MARTIN INVESTMENT<br>MANAGEMENT COMPANY, 6901 Rockledge Drive,<br>Fourth Floor, Bethesda, Montgomery County,<br>Maryland,<br>　　　　　　Plaintiff,<br><br>　　　v.<br><br><br>THE NORTHERN TRUST COMPANY and<br>NORTHERN TRUST INVESTMENTS, N.A.,<br><br>　　　　　　Defendants. | Civil Action No. _____ |

## COMPLAINT

Plaintiff Lockheed Martin Investment Management Company ("Plaintiff" or

"LMIMCo") brings this action as a named fiduciary of the Lockheed Martin Corporation Defined

Contribution Plans Master Trust (the "Master Savings Trust") and on behalf of the plans that

participate in the Master Savings Trust (the "Plans") and all participants in and beneficiaries of

the Plans to recover all losses sustained as well as all profits earned by Defendants as a result of

Defendants' breaches of fiduciary duty.  As set forth more fully herein, Defendants The Northern

Trust Company ("NTC") and Northern Trust Investments, N.A. ("NTI") (collectively, "Northern

Trust") violated numerous provisions of the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1001 et seq. in connection with their securities lending activities,

resulting in losses to the Plans, which, upon information and belief, exceed $20 million. Accordingly, Plaintiff avers as follows:

## PARTIES

1.      Plaintiff LMIMCo is a wholly-owned subsidiary of Lockheed Martin Corporation ("LMC"), a Maryland corporation with its principal place of business in the State of Maryland. LMIMCo is a named fiduciary of the Plans and of the Master Savings Trust.

2.      Defendant NTC is an Illinois state banking corporation with its principal place of business in Illinois. NTC an affiliate of, and is the securities lending agent for, NTI. NTC is a fiduciary of the Plans.

3.      Defendant NTI is an affiliate of NTC and is a national banking association with its principal place of business in Illinois. NTI is an investment manager and a named fiduciary of the Plans. NTI is also the trustee of the Northern Trust Global Investments Collective Funds Trust (the "NTGI Trust") and manages the collective funds at issue in this case.

4.      NTC and NTI each acted as fiduciaries of the Plans as defined in ERISA § 3(21), 29 U.S.C. § 1002(21) because each exercised discretionary authority or discretionary control respecting the management, administration or assets of the Plans or rendered investment advice for a fee.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

6.      This Court has personal jurisdiction over all Defendants because of Defendants' continuous and systematic contacts with this district and/or soliciting to do business in this district.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2) because the Plans are administered in this District.

## FACTS

### The Plans

8.      LMC maintains the Plans for the benefit of its salaried and hourly employees.

9.      The Plans are "defined contribution plans," as defined in ERISA § 3(34), 29 U.S.C. § 1002(34).

10.      The Plans operate in connection with the Master Savings Trust, which holds the assets of the Plans.  In connection with Northern Trust's purchase of Deutsche Bank AG's index fund investment business, LMIMCo and Northern Trust negotiated an Assignment and Assumption Agreement (the "Assignment Agreement") in January 2003.  As a result of the Assignment Agreement, NTI became an investment manager for the Master Savings Trust pursuant to the Investment Management Agreement (the "Management Agreement") executed by and between LMIMCo and NTI.

11.      Section 4.1 of the Management Agreement provides that NTI shall indemnify, among others, LMIMCo and the Master Savings Trust from and against any and all losses and all reasonable fees, costs, and expenses in connection therewith (including litigation-

related expenses) to the extent the losses are based upon, caused by, or arise, directly or

indirectly, from any violation or breach of the Management Agreement or ERISA by NTI or its

agents (including NTC).

      12.    Plan participants may invest their accounts in any of 22 investment

options, comprised in part by six collective funds established pursuant to the NTGI Trust,

including the NTGI-QM Collective Daily Aggregate Bond Index Fund-Lending (the "Bond

Fund"). NTI is the Trustee of the NTGI Trust and of these six collective funds.

      13.    The Bond Fund is a conservative index fund. Its objective is to provide

investment results that track as closely as possible the overall performance of the Lehman

Brothers Aggregate Bond Index, now known as the Barclays Capital Aggregate Bond Index (the

"Index").

### The Securities Lending Program

      14.    Northern Trust described its securities lending program philosophy to

LMIMCo as "[l]ow risk activity designed to enhance the return of an overall investment

program" and its strategy as "[e]mphasizing short horizon liquidity considerations in portfolio

management" and "[m]onitoring and regularly re-assessing impacts of market activity on

expected portfolio and product outcomes."

      15.    To offset fund expenses and to increase the likelihood that the Bond Fund

will not underperform the benchmark Index, the Master Savings Trust through the Bond Fund

participates in a Northern Trust securities lending program pursuant to which Northern Trust

lends assets of the Bond Fund and invests the cash collateral securing those loans. Northern

Trust is entitled to receive 40% of the securities lending revenue earned by lending Bond Fund assets.

16.    In January 2003, NTC and LMIMCo executed a contract entitled Notice and Consent Regarding Securities Lending Arrangements (the "Notice and Consent") concerning the Plans' participation in Northern Trust's securities lending program.  At LMIMCo's request, NTC's form of Notice and Consent was modified to expressly provide that "[c]ash collateral pledged by borrowers will be invested at Northern's discretion in short term instruments or in the cash collateral investment fund of the Core USA Collateral Section, all in accordance with the Collateral Schedule for that Collateral Section [the "Collateral Schedule"], a copy of which is attached hereto." (Emphasis added.)  The Notice and Consent was made part of the Management Agreement through the Assignment Agreement.

17.    The Collateral Schedule's investment guidelines, made applicable to the Master Saving Trust's participation in the securities lending program by the Management Agreement and the Assignment Agreement, include specific requirements concerning liquidity, maturity, diversification and credit quality that apply to each fund managed by Northern Trust in which Northern Trust invests cash collateral.

18.    The Notice and Consent also provides that NTC or its affiliates will indemnify the Plans for damages resulting from any investment of cash collateral that is not in accordance with the Collateral Schedule.

19.    The Assignment Agreement also amended Section 1.8 of the Management Agreement to further ensure that the investment guidelines set forth in the Notice and Consent

would apply to any cash collateral received by Northern Trust's securities lending program with respect to the Master Savings Trust investments.  Section 1.8 of the Management Agreement, as amended, expressly provides that the "<u>Investment Manager's responsibilities and obligations under</u> (a) Sections 1.3, 1.4 (with respect to the use of and reporting on soft dollar arrangements), 1.5, 1.6, 1.7, 2.1, 4.1 and 5.1 of this Agreement, (b) the Assignment and Assumption Agreement, (c) <u>the Notice and Consent Regarding Securities Lending Arrangements</u>, and (d) the Notice and Consent Concerning Participation in Equilend in accordance with Equilend Prohibited Transactions Exemption <u>shall apply with respect to amounts invested in such collective or commingled fund</u>."  (Emphasis added.)

20.     Northern Trust invests cash collateral generated by lending of securities in the Bond Fund in two Northern Trust collective funds, the NTGI Collective Short Term Extendable Portfolio (the "STEP Fund") and the NTGI Collective Short Term Investment Fund (the "STIF Fund"), as well as in the Open and Term cash collateral funds of the Core USA Collateral Section.

21.     However, LMIMCo did not learn that Northern Trust was investing cash collateral in the STEP or STIF Funds until the spring of 2008 and did not learn that the STEP Fund violated the Collateral Schedule's investment guidelines, as described below, until after the Plans had already suffered losses.

**<u>Defendants' Violations of the Investment Guidelines</u>**

22.     The STEP Fund's holdings violate the applicable investment guidelines set forth in the Collateral Schedule concerning liquidity, maturity, diversification and quality.  By

investing cash collateral attributable to the Master Savings Trust in the STEP Fund, Northern Trust breached its contractual obligations under the Management Agreement and acted imprudently and violated its fiduciary duties under ERISA.

23.     As to liquidity, the Collateral Schedule requires 20% of fund assets to be available each business day.  During October 2008, only approximately 10% of the STEP Fund's assets were available within one business day, and thus, Defendants' investment of Plan assets in the STEP Fund did not comply with the Collateral Schedule's liquidity requirements.

24.     As to maturity, the Collateral Schedule requires 60% of fund assets to have maturities of less than 97 days.  During October 2008, only approximately 16% of the STEP Fund assets had maturities of less than 97 days, and thus, Defendants' investment of Plan assets in the STEP Fund did not comply with the Collateral Schedule's maturity requirements.

25.     The Collateral Schedule also requires that no more than 40% of fund assets may have maturities exceeding 97 days.   During October 2008, approximately 85% of the STEP Fund had maturities exceeding 97 days, and thus, Defendants' investment of Plan assets in the STEP Fund did not comply with the Collateral Schedule's maturity requirements.

26.     As to diversification, the Collateral Schedule prohibits the investment of more than 5% of fund assets in the instruments of any one issuer.  As of October 31, 2008, the STEP Fund included assets that substantially exceeded this 5% cap.  Thus, Defendants' investment of Plan assets in the STEP Fund did not comply with the Collateral Schedule's diversification requirements.

7

27.     As to quality, the Collateral Schedule requires bonds and other long-term obligations to be rated at the time of purchase in one of the three highest categories by at least two rating agencies.  As of January 12, 2009, the STEP Fund included instruments rated below the three highest categories by at least two rating agencies at the time of purchase.  Thus, the Defendants' investment of Plan assets in the STEP Fund did not comply with the Collateral Schedule's credit quality requirements.

28.     Because the STEP Fund did not comply with these and other investment guidelines set forth in the Collateral Schedule, Northern Trust breached its fiduciary duties to the Plans and breached its contractual obligations to LMIMCo in violation of documents governing the Plans by investing cash collateral in the STEP Fund.

**Imprudence of Investment of Cash Collateral in the STEP Fund**

29.     The Notice and Consent allows investment of cash collateral only in "short term instruments or in the cash collateral investment fund of the Core USA Collateral Section."

30.     Although the STEP Fund purports to be a "short term" fund, it is not.  In fact, as of November 2008, its weighted average maturity was two years, which far exceeds the 366 day-or-less definition of a short-term obligation in the Notice and Consent.  Moreover, as described in paragraphs 23-25, the STEP Fund investments did not comply with the Collateral Schedule's conservative liquidity and maturity requirements.

31.     By imprudently investing cash collateral in the STEP fund, which was not a "short term" fund, Northern Trust breached its fiduciary duties to the Plans and failed to follow

the Notice and Consent, a document governing the Plans, thereby breaching its contractual obligations to LMIMCo.

32.     Northern Trust also breached its fiduciary duties of prudence by investing cash collateral, through the STEP Fund, in instruments which were wholly inappropriate for the investment of cash collateral, including but not limited to certain structured investment vehicles, and continuing to hold these investments even as they became increasingly illiquid.

33.     In addition, Northern Trust breached its fiduciary duties of prudence and loyalty by failing to timely inform LMIMCo that cash collateral was being invested in the STEP Fund, failing to inform LMIMCo that investments in the STEP Fund did not comply with the Collateral Schedule's conservative investment guidelines, and failing to provide LMIMCo with the information it needed to assess Northern Trust's management of its securities lending program.

### Northern Trust's Additional Breach of Fiduciary Duty with Respect to the Target Date Funds

34.     In early 2008, LMIMCo created Target Date Funds in which the asset allocation is re-balanced over time as the investor's "target date" for retirement approaches. Participants in the Plans designated amounts to be invested in the Target Date Funds.

35.     In late Spring 2008, LMIMCo informed Northern Trust that it needed an investment vehicle to hold temporarily approximately $240 million in amounts designated for the Target Date Funds pending the selection of a manager for those funds.  LMIMCo told Northern

Trust that the Target Date Fund assets would need to be transferred to another manager on very short notice.

36.     Northern Trust represented to LMIMCo that the Bond Fund could hold the Target Date Fund assets on a temporary basis and that, because the Bond Fund was highly liquid, LMIMCo would be able to withdraw those assets on short notice – i.e., a matter of weeks – as soon as a new manager for the funds had been selected.

37.     In reliance on Northern Trust's representations, LMIMCo allowed approximately $240 million in Target Date Fund assets to remain invested in the Bond Fund pending the selection of an investment manager for those assets.

38.     After selecting Western Asset Management Company ("WAMCo") as manager for the Target Date Funds, LMIMCo sent notice to Northern Trust by letter dated August 29, 2008, requesting that the Target Date Funds proceeds be wired to a WAMCo account at State Street Bank and Trust Company on October 1, 2008.

### Northern Trust's Refusal to Redeem the Plans' Assets in Full

39.     Approximately three weeks later, on September 19, 2008, Northern Trust declared that securities issued by Lehman, Sigma Finance, and Theta Finance held in the STEP Fund were permanently impaired and that securities lending clients investing in the STEP Fund would be exposed to realized and unrealized losses, including an increased tracking variance from the benchmark Index.

40.     Thereafter, in the wake of the deficiency declared in the STEP Fund, Northern Trust advised LMIMCo that it would not be able to honor LMIMCo's instruction to

transfer the Target Date Funds being held temporarily in the Bond Fund to WAMCo on October 1, 2008 per LMIMCo's instructions.

41.     Northern Trust further stated that, if the Bond Fund was liquidated, the proceeds would include an in-kind distribution of the illiquid STEP units in which Bond Fund collateral had been invested.  Northern Trust also stated that if LMIMCo forced a sale of the illiquid Bond Fund, LMIMCo would receive much less than its full investment.

42.     Because Northern Trust had refused to honor its agreement to redeem the assets in full and had advised the Target Date Funds would suffer substantial losses if the Bond Fund investment was liquidated, LMIMCo had no choice but to cancel its previous request to transfer the Target Date Fund assets.

43.     After learning of the losses in the Bond Fund as a result of investments in the STEP Fund, LMIMCo also approached Northern Trust about its options for withdrawing all Master Savings Trust assets from the Bond Fund in exchange for cash.  As it did with respect to the Target Date Funds, Northern Trust refused to redeem the full value of the Plans' assets in the Bond Fund.  According to Northern Trust, a significant portion of the assets would have to be paid in the form of the impaired and illiquid STEP Fund units and a forced sale would result in LMIMCo receiving much less than its full investment in the STEP Fund.

44.     The principal source of losses suffered by investments in the Bond Fund was Northern Trust's investment of cash collateral generated by the securities lending program in the STEP Fund.

11

45.     Northern Trust also acted imprudently by lending an excessive percentage of Bond Fund securities and, in fact, continued to act imprudently by increasing Bond Fund securities lending even after sustaining a collateral deficiency and losses in the STEP Fund.

46.     Northern Trust's excessive and imprudent securities lending has caused the Bond Fund's performance to diverge substantially from the benchmark Index and has caused losses to the Master Savings Trust.

## COUNT I
### (Breach of ERISA Fiduciary Duties or Co-Fiduciary Duties Against NTC and NTI)

47.     Paragraphs 1-46 are realleged and incorporated by reference herein.

48.     Defendants at all times pertinent hereto were fiduciaries of the Plans as defined in ERISA § 3(21), 29 U.S.C. § 1002(21).

49.     In accordance with ERISA § 404(a), 29 U.S.C. § 1104(a), Defendants, as fiduciaries of the Plans, were required to discharge their duties: (a) solely in the interest of Plan participants and for the exclusive purpose of providing benefits to participants while defraying reasonable expenses of administering the Plans and (b) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

50.     In addition, section § 404(a) of ERISA requires Defendants, as fiduciaries of the Plans, to comply with the documents and instruments governing the Plans.

12

51.     Northern Trust breached its fiduciary duties to the Plans in violation of ERISA § 404(a) by, among other things: (a) investing cash collateral in the STEP Fund, which was not a "short term instrument" as required by the Notice and Consent and which contained risky and illiquid investments, including certain structured investment vehicles; (b) breaching the liquidity requirements set forth in the Collateral Schedule; (c) breaching the maturity requirements set forth in the Collateral Schedule; (d) breaching the credit quality requirements set forth in the Collateral Schedule; (e) breaching the diversification requirements set forth in the Collateral Schedule; (f) failing to provide LMIMCo with the information it needed to assess Northern Trust's performance as an investment manager and manager of the securities lending program; (g) misrepresenting to LMIMCo that the Bond Fund was a highly liquid fund; and (h) lending an excessively high percentage of securities in the Bond Fund and increasing securities lending even after sustaining losses.

52.     As a result of the foregoing breaches of Defendants' fiduciary duties, the Plans have suffered losses, in an amount to be proved at trial.

53.     ERISA § 409(a), 29 U.S.C. § 1109(a), requires fiduciaries who are liable for a breach of fiduciary duty to restore and make good all losses that resulted from such breach. Pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), Defendants must restore and make good all losses that resulted from their breaches.

54.     Under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), a fiduciary may bring an action for relief under ERISA § 409.  In addition, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a fiduciary may bring an action to enjoin any act or practice violating ERISA or the

13

terms of the plan, or to obtain other appropriate equitable relief to redress such violations, enforce any provision of ERISA, or enforce the terms of the plan.

55.     LMIMCo, as a fiduciary of the Plans, brings this action to require Defendants to restore all losses to the Plans resulting from Defendants' breaches of their obligations concerning the investment and withdrawal of the Plans' assets and for equitable relief requiring Defendants to return the assets of the Master Savings Trust in accordance with their ERISA fiduciary duties.

## COUNT II
### (Additional Breach of ERISA Fiduciary Duties or Co-Fiduciary Duties With Respect to Target Date Funds Against NTC and NTI)

56.     Paragraphs 1 – 55 are realleged and incorporated by reference herein.

57.     In addition to the breaches described in Paragraph 51 above, Northern Trust also breached its fiduciary duties to the Plans in violation of ERISA § 404(a) with respect to the Target Date Funds invested in the Bond Funds by (a) misrepresenting to LMIMCo that the Bond Fund was highly liquid and that LMIMCo would be able to withdraw the full amount of the Target Date Funds invested in the Bond Fund on short notice and (b) refusing to honor LMIMCo's August 2008 instruction to redeem those assets in full by October 1, 2008.

58.     As a result of the foregoing breaches of Defendants' fiduciary duties, the Target Date Funds temporarily invested in the Bond Fund have suffered losses, in an amount to be proved at trial.

14

59.     ERISA § 409(a), 29 U.S.C. § 1109(a), requires fiduciaries who are liable for a breach of fiduciary duty to restore and make good all losses that resulted from such breach. Pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), Defendants must restore and make good all losses that resulted from their breaches.

60.     Under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), a fiduciary may bring an action for relief under ERISA § 409.  In addition, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a fiduciary may bring an action to enjoin any act or practice violating ERISA or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations, enforce any provision of ERISA, or enforce the terms of the plan.

61.     LMIMCo, as a fiduciary of the Plans, brings this action to require Defendants to restore all losses to the Plans resulting from Defendants' breaches of their obligations concerning the investment and withdrawal of the Plans' assets and for equitable relief requiring Defendants to return the assets of the Master Savings Trust in accordance with their ERISA fiduciary duties.

### COUNT III
### (ERISA Prohibited Transactions By NTC and NTI as Parties in Interest)

62.     Paragraphs 1 – 61 are realleged and incorporated by reference herein.

63.     In accordance with ERISA § 406(b), 29 U.S.C. § 1106(b), because the lending fiduciary, Northern Trust, has discretion as to the timing and the amount of the securities lending transactions, and earns compensation for conducting the transactions as a percentage of the earnings from the investment of the collateral, the transactions are prohibited transactions

under ERISA.  Part I(c) of Prohibited Transaction Class Exemption ("PTCE") 2006-16, however, provides that the payment of such compensation is not a prohibited transaction if certain requirements set forth in Part IV of the PTCE are satisfied.  As alleged below, Northern Trust failed to meet the requirements necessary to rely on PTCE 2006-16.

64.    Among other things, Part IV of PTCE 2006-16 requires prior written authorization from an authorizing fiduciary (in this case LMIMCo) for any arrangement, or material change to an arrangement, under which compensation is paid to the lending fiduciary (in this case Northern Trust) for securities lending services.  This requirement applies to common or collective trust funds (in this case the Bond Fund) where the lending fiduciary (1) fails to provide any reasonably available information which the lending fiduciary reasonably believes to be necessary to determine whether such authorization should be made or renewed at least 30 days prior to the implementation of the arrangement or material change to the arrangement, or (2) fails to give the authorizing fiduciary, if it objects to the implementation of the arrangement or the material change to the arrangement after receiving the necessary information, the opportunity to terminate its investment in the account or fund, without penalty to the plan, within such time as may be necessary to effect such withdrawal in an orderly manner that is equitable to all withdrawing plans and non-withdrawing plans.

65.    In addition, PTCE 2006-16 provides no exemption from ERISA § 406 if the collateral received in securities lending transactions is invested at the fiduciary's discretion in funds related to the lending fiduciary and the lending fiduciary also receives fees for managing those funds.

66.    Upon information and belief, Northern Trust has charged management fees for funds in which collateral received in securities lending transactions involving the Plans is invested, including the STEP Fund, the STIF Fund, and the cash collateral fund of the Core USA Collateral Section. The imposition of these fees is information that any lending fiduciary would reasonably believe is necessary for LMIMCo to determine whether authorization for Northern Trust to receive compensation for securities lending services should be made or renewed, and constitutes a material change in the compensation arrangement with Northern Trust.

67.    In addition, Northern Trust invested cash collateral in the STEP Fund in violation of the Notice and Consent and, upon information and belief, earned additional securities lending revenue as a result.  Thus, the investment of cash collateral in the STEP Fund also constitutes information that any lending fiduciary would reasonably believe is necessary for LMIMCo to determine whether authorization for Northern Trust to receive compensation for securities lending services should be made or renewed, and constitutes a material change in the compensation arrangement with Northern Trust.

68.    Northern Trust did not disclose to LMIMCo the management fees associated with the investment of cash collateral in the STEP Fund, the STIF Fund, or the cash collateral fund of the Core USA Collateral Section prior to investment in those vehicles, and failed to obtain prior written authorization from LMIMCo for the imposition of those fees. Northern Trust also failed to disclose to LMIMCo that it was receiving additional securities lending revenue from the investment of cash collateral in the risky and volatile STEP Fund.  In addition, Northern Trust failed to give the Plans the opportunity to terminate investment in the

STEP Fund without penalty to the Plans.  As a result, Northern Trust has failed to comply with the requirements of Part IV of PTCE 2006-16.

69.     Northern Trust's receipt of management fees related to investments of cash collateral made in its fiduciary discretion in its own funds also constitutes a separate prohibited transaction that is not permitted by PTCE 2006-16.

70.     As a direct result of Defendants' conduct, the Plans suffered losses for which Defendants are liable under ERISA § 409, 29 U.S.C. § 1109, in an amount to be proven at trial.  In addition, Defendants are liable for excise taxes and/or penalties and have a duty to correct their prohibited transactions, pursuant to Internal Revenue Code § 4975, 26 U.S.C. §§ 4975 and ERISA § 502(i), 29 U.S.C. § 1132(i).

71.     Defendants must disgorge any fees paid by LMIMCo in connection with the investments of cash collateral in the STEP Fund, the STIF Fund or the cash collateral fund of the Core USA Collateral Section that accrued after the failures to disclose necessary information and the material changes in the compensation arrangement described in paragraphs 66-69 occurred.

## COUNT IV
### (Breach of Contract By NTC and NTI)

72.     Paragraphs 1 – 71 are realleged and incorporated by reference herein.

73.     Alternatively, LMIMCo alleges that the Plans are entitled to relief under the federal common law of contract which Congress authorized when it enacted ERISA.

74.     Specifically, Northern Trust breached its contractual obligations to LMIMCo under the Management Agreement and the Notice and Consent by: (a) investing cash collateral in the STEP Fund, which was not a "short term instrument" as required by the Notice and Consent; (b) breaching the liquidity requirements set forth in the Collateral Schedule of the Notice and Consent; (c) breaching the maturity requirements set forth in the Collateral Schedule of the Notice and Consent; (d) breaching the credit quality requirements set forth in the Collateral Schedule of the Notice and Consent; and (e) breaching the diversification requirements set forth in the Collateral Schedule of the Notice and Consent.

75.     LMIMCo seeks monetary damages, in an amount to be proven at trial, to compensate it for losses resulting from Defendants' breaches of contract.

## COUNT V
### (Breach of Contract By NTC and NTI Relating to the Target Date Funds)

76.     Paragraphs 1 – 75 are realleged and incorporated by reference herein.

77.     In addition to the breaches under federal common law identified in paragraph 74 above, Northern Trust also breached its agreement with LMIMCo by: (a) allowing the Target Date Funds to remain invested in a fund that was not liquid and could not be transferred on short notice and (b) refusing to honor LMIMCo's August 2008 instruction to redeem those assets in full by October 1, 2008.

78.     LMIMCo seeks monetary damages, in an amount to be proven at trial, to compensate it for losses resulting from Defendants' breaches of contract.

WHEREFORE, Plaintiff, on behalf of the Plans and their participants, pray for the following relief:

a.  that judgment be entered against Defendants;

b.  that, pursuant to § 502(a)(3) of ERISA, the Court order Defendants, jointly and severally, to restore and make good to the Plans the losses incurred as a result of the unlawful conduct described above;

c.  that, pursuant to §§ 409(a) and 502(a)(2) of ERISA, the Court award relief in the form of compensation for losses to the Plans, in an amount to be determined at trial, resulting from Defendants' breaches of fiduciary duty, prohibited transactions, and violation of Plan documents;

d.  that the Court declare that the receipt by Defendants of management fees related to the investment of cash collateral constitutes a prohibited transaction under ERISA § 406 and order Defendants to disgorge those fees;

e.  that the Court declare that failing to give the Plans the opportunity to fully terminate investment in the Bond Fund and the STEP Fund without penalty to the Plans constitutes a prohibited transaction under ERISA § 406;

f.  that, in the alternative, the Court award with respect to Counts IV and V monetary damages in an amount to be determined by the Court, resulting from Defendants' breaches of the federal common law of contract;

g.  that the Court award Plaintiff attorneys' fees and costs of this action in accordance with ERISA § 502(g) and Section 4.1 of the Management Agreement;

h.  that the Court award Plaintiff pre-judgment and post-judgment interest; and

i.  that the Court award such further legal or equitable relief that the Court deems just and proper.

Respectfully submitted,

HOGAN & HARTSON L.L.P.

_Lisa Bonanno_

David J. Hensler (D. Md. Bar ID # 04810)
Lisa Bonanno (D. Md. Bar ID # 04809)
Michele W. Sartori (D. Md. Bar ID # 26829)
HOGAN & HARTSON L.L.P.
Columbia Square
555 13th Street N.W.
Washington, D.C. 20004
Tel:  (202) 637-5600
Fax: (202) 637-5910
djhensler@hhlaw.com

*Attorneys for Plaintiff*


OF COUNSEL*
Chuck Rosenberg
Kurt L.P. Lawson
HOGAN & HARTSON L.L.P.
Columbia Square
555 13th Street N.W.
Washington, D.C. 20004
(202) 637-5600

**pro hac vice* admission to be sought

21